

**DEPARTMENT OF THE NAVY**
OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY
614 SICARD STREET SE SUITE 100
WASHINGTON NAVY YARD, D.C. 20374-5072

# EXHIBIT A

**CARRIE THOMAS,**
**Complainant**

**v.**

**THOMAS W. HARKER,**
**Acting Secretary,**
**U.S. Department of the Navy**

**DON No. 19-30270-01944**

## FINAL AGENCY DECISION

**April 1, 2021**

### STATEMENT OF CLAIM

Complainant alleged she was discriminated against and subjected to harassment on the bases of reprisal and disability (mental) when the following events occurred:

a. On or about April 2017, her request for reasonable accommodation of a flexible work scheduled was denied.

b. On June 5, 2018, she was issued a Letter of Requirement that placed her under special leave procedures.

c. Between October 30, 2018 and March 15, 2019, she was charged AWOL instead of being provided a reasonable accommodation.

d. On March 4, 2019, she was issued a Notice of Proposed Suspension for five days.

e. On March 21, 2019, management denied her reasonable accommodation request and requested more medical information.

f. On May 2, 2019, she was placed on Administrative Leave.

g. She was suspended for five days effective May 6-10, 2019.

h. On May 10, 2019, she received notice of intent from the Command proposing to suspend her access to classified information and assignment to sensitive position.

## PROCEDURAL DISMISSAL

Through *Notice of Partial Dismissal of Discrimination Complaint* dated August 9, 2019, the Activity dismissed the following incidents for untimely contact:

a. On or about April 2017, her request for reasonable accommodation of a flexible work scheduled was denied.

b. On June 5, 2018, she was issued a Letter of Requirement that placed her under special leave procedures.

Investigative File (IF), pages (pp.) 000109-000110.[1]

EEOC Regulation 29 C.F.R. § 1614.107(a)(2) states that prior to a request for a hearing in a case, the agency shall dismiss an entire complaint, or portion thereof, that fails to comply with the time limits set forth in 29 C.F.R. § 1614.105. Specifically, 29 C.F.R. § 1614.105(a)(1) indicates an aggrieved person must initiate contact with a Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory. The time limit to seek EEO counseling shall be extended when an individual shows s/he did not know and or reasonably should not have known that the discriminatory action or personnel action occurred or when, despite due diligence, the individual was prevented from contacting an EEO counselor. 29 C.F.R. § 1614.105(a)(2).

Pursuant to 29 C.F.R. § 1614.102(b)(7), the Agency prominently displays notices in appropriate locations which contains the applicable time limits including the necessity of contacting an EEO counselor within forty-five (45) days of an alleged discriminatory event, EEO Counselor contact information, and the necessity of contacting a Counselor before filing a formal complaint. Constructive knowledge is imputed to an employee when the employer has fulfilled its obligation of informing employees of their rights and obligations under Title VII. Thompson v. Dep't of the Army, EEOC Appeal No. 05910474, 3 (Sept. 12, 1991) (citing Kale v. Combined Ins. Co. of Am., 961 F.2d 746, 752-53 (1st Cir. 1988)).

The Commission has adopted a "reasonable suspicion" standard to determine when the forty-five (45) day limitation period is triggered. Davis v. Dep't of the Air Force, EEOC Appeal No. 01A21734, 1 (Mar. 18, 2003). Thus, the time limitation is not triggered until a complainant reasonably suspects discrimination but before all the facts that support a charge of discrimination have become apparent. However, a complainant must act with due diligence in the pursuit of a claim or the doctrine of laches may apply. Fulcher v. Dep't of the Army, EEOC Appeal No. 0120152718, 1 (Dec. 22, 2015) (finding that the doctrine of laches applied when complainant waited over two years from the date of the alleged discriminatory events before contacting an EEO Counselor). The doctrine of laches is an equitable remedy under which an individual's failure to diligently pursue legal remedies could bar his or her claim. Fulcher, EEOC Appeal No. 0120152718 at 1 (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curium) ("One who fails to act diligently cannot invoke equitable principles to excuse lack of diligence"))

---

[1] Hereinafter, we note references to the record as follows: Investigative File (IF), and page(s) (p. or pp.).

The incidents identified in Claims a-b constitute discrete acts; and thus, contact with an EEO counselor must have occurred within the time limits established in 29 CFR 1614.107(a)(2). Complainant did not make her initial contact with an EEO counselor until March 15, 2019, and she has failed to show she did not know the alleged discriminatory actions occurred.

Accordingly, we find that Claims a-b were properly dismissed as untimely, and incorporate said dismissals herein.

## PROCEDURAL HISTORY

On March 15, 2019, Complainant requested Equal Employment Opportunity (EEO) counseling. The EEO Counselor sought to resolve Complainant's allegations to no avail. IF, p. 000085. On June 3, 2019, the EEO Counselor issued Notice of Final Interview/Right to File a Formal Complaint of Discrimination. IF, p. 000102. Complainant filed a formal complaint on June 19, 2019, pursuant to the Rehabilitation Act of 1973 (Rehab Act), as amended. IF, pp. 000006-000081. By letter dated August 9, 2019, the Department of the Navy (Agency) partially accepted the complaint pursuant to the Equal Employment Opportunity Commission's (EEOC's) Regulations found in Title 29 Code of Federal Regulations (29 C.F.R.) Part 1614.  IF, pp. 000109-000114.

CACI International conducted a formal investigation of this complaint from August 12, 2019 to February 21, 2020.  IF, p. 000123. Agency records reveal that we provided Complainant a copy of the Investigative File (IF) via email on March 6, 2020, and certified mail on March 9, 2021. IF, pp. 000771, 000776. The notice of rights included with the IF explained that Complainant could request a hearing before the EEOC or a final decision (FAD) without a hearing. We also advised Complainant that if she did not notify the Agency of her wishes within the specified time limits, we would issue a final decision based upon the evidence in the IF.

Although Complainant received the IF more than 30 days ago, we have not received notice of her wishes regarding the final decision with or without a hearing. Accordingly, we are issuing this final decision based on the merits of the complaint pursuant to 29 C.F.R. § 1614.110(b).

## BACKGROUND

During the relevant period, **Complainant** was a NH-0501-04, Business Financial Manager, NAVSEA, Arlington, Virginia, with a stated disability and prior EEO activity. She states she had been with NAVSEA since October 19, 2014 and on an unpaid suspension since October 1, 2019. She states her first-line supervisor was RMO1, Director, Contracts and Business Operations, Surface Ship Weapons, Program Execution Office (PEO) Integrated Weapons Systems (IWS) 3E, since March 22, 2017; her second-line supervisor was RMO2, Deputy Major Program Manager (DMPM) PEO IWS 3, since approximately March 22, 2017. According to the record, Complainant has been diagnosed with Major Depression Disorder, General Anxiety Disorder and Obsessive-Compulsive Disorder. She states she first participated in protected EEO activity in October 2018. She submitted a reasonable accommodation (RA) request in November 2018.  She states she initiated the EEO process on October 9, 2018, and subsequently withdrew from the

3

process; she initiated contact regarding the underlying claims on March 15, 2019.  IF, pp. 000074, 000158-000159.

**RMO1,** Principal Assistant Program Manager/Director, Contracts and Business Operations, PEO IWS, Surface Ship Weapons (3.0) NAVSEA, was Complainant's first line supervisor. RMO1 states her first-line supervisor was RMO2, Deputy Program Manager. RMO1 was aware of Complainant's disability. She states Complainant could not adequately perform the essential functions of her position and did not meet the expected contribution criteria for her competency level as related to job achievement and/or innovation, communication and/or teamwork or mission support.  IF, pp. 000496-000497.

**RMO2**, Deputy Program Manager, PEO IWS 3.0, has been with NAVSEA since November 1989 and was Complainant's second line supervisor. He states that the first time he heard Complainant reference EEO was on September 24, 2018, when she came to his office and informed him, "[he] was her last stop before going to EEO." He states they discussed the situation and she stated she would like to participate in supervisor/employee mediation and he immediately agreed and took action to set it up.  RMO2 states Complainant made him aware of her disability in early October 2018.  IF, pp. 000552-000554.

**RMO3**, NH-03, Program Analyst, PEO IWS 3L, NAVSEA, Crystal City, VA, states he has been with NAVSEA since November 16, 2015. RMO3 states he was not aware of Complainant's disability until March 1, 2019, when he was forwarded an email in which Complainant's supervisor provided attachments about Complainant's absences and timekeeping issues. He states he became aware of her EEO activity on February 3, 2020, when he received an email from the NAVSEA EEO requesting his participation in Complaint Processing (Formal). IF, pp. 000564-000565.

The following documentation also provides relevant background information for this complaint:

On October 30, 2018, RMO1 issued Complainant a letter of reprimand for Failure to Follow Instructions, Failure to Follow Leave Procedures, and Absent without Leave (AWOL). IF, pp. 000042-000046.

On March 4, 2019, RMO1 issued Complainant a Notice of Proposed Suspension for Failure to Follow Leave Procedures, Lack of Candor, Disrespectful Conduct, and Absent without Leave. IF, pp. 000048-000054).

In a letter dated March 20, 2019, RMO1 requested current medical documentation to determine the Agency's obligation to provide a reasonable accommodation (RA).  IF, pp. 000712-000713.

On May 10, 2019, Complainant received a Notice of Intent to Suspend Access to Classified Information and Assignment to a Sensitive Position and Suspension of Physical Access to Naval Sea Systems Headquarters Facilities at the Washington Navy Yard. According to the Notice, reported incidences of suicidal ideations, employee conduct and subsequent disciplinary action, scope of self-described mental health conditions, scope of documented mental health conditions, amount of prescribed medicines for mental health conditions with unknown side/causal effects,

4

non-adherence to prescribed medications, and workplace behavior, impacted raised questions about Complainant's ability to protect classified information and continued suitability for security clearance eligibility. The Notice further indicated Complainant's suicidal ideations raised concerns as to the threat she may pose to self or others. Complainant was provided the opportunity to provide a response. IF, pp. 000056-000058.

## STATEMENT OF FACTS

**Incident (c): Between October 30, 2018 and March 15, 2019, Complainant was charged AWOL instead of being provided a reasonable accommodation.**

**Complainant** states she cannot name everyone who charged her with AWOL and the reasons for the charges because there were so many. Complainant states she was marked AWOL 54 times between October 1, 2018 and May 2, 2019, when she was finally placed on administrative leave. She states she used a lot of leave due to not having been provided any type of Reasonable Accommodation. IF, pp. 000169-000176.

**Management's Response**

**RMO1** states there were no instances when Complainant was charged AWOL instead of being provided a reasonable accommodation. She states that between October 30, 2018 and March 15, 2019, Complainant's AWOL charges were related to her failure to follow instructions, failure to follow leave procedures, and misconduct. She states there were several times during this period when Complainant failed to follow leave procedures, arrived late, or was away from her desk for extensive periods of time, and she could use annual or sick leave instead of being charged AWOL. IF, pp. 000504-000530.

**RMO2** states RMO1 worked with LE/HR to determine when AWOL was appropriate in accordance with the Letter of Requirements that had been provided to Complainant on June 5, 2018. He states RMO1 worked daily to keep track of Complainant's unexcused absences to ensure her time was properly documented. He states he did not make any changes to time that Complainant had entered, noting RMO1 often had to enter Complainant's time in her absence to meet timecard deadlines. IF, pp. 000554-000557.

**Incident (d):  Notice of Proposed Suspension for five days.**

**Complainant** states that RMO1 issued her the notice of proposed suspension on March 4, 2019, because she did not arrive to work at exactly 9:00 a.m. and did not leave at exactly 5:30 p.m., and also asserted that she could not follow directions. She states that being unable to perform, is not misconduct. She states that if she had been provided help rather than punishment, she would most likely be a productive employee today. IF, pp. 000176-000178.

**Management's Response**

**RMO1** states that starting in April 2017 to May 2018, she issued verbal and written warnings to Complainant about adherence to policy and procedures related to time and attendance, teleworking, and core hours. She states that in March 2018, she told Complainant that if she did

not comply with the rules, she would take a more formal direction to correct the conduct. She states she issued the Notice of Proposed Suspension for five days for Complainant's failure to follow leave procedures, lack of candor, disrespectful conduct, and AWOL. IF, pp. 000530-000532.

**RMO2** states RMO1 issued a Notice of Proposed Suspension for five days for failure to follow leave procedures, lack of candor, disrespectful conduct, and AWOL. He states he knows of no one in IWS 3, similarly situated to Complainant who was treated more favorably.  IF, pp. 000557-000558.

### Incident (e): On March 21, 2019, management denied Complainant's reasonable accommodation request and requested more medical information.

**Complainant** states that none of the reasonable accommodations she and her psychologist suggested were discussed in her approval letter. She states RMO1 made up new ideas of what she was willing to provide, which is not a reasonable accommodation. Complainant states that even though she identified a mental health issue, over and over, she continued to receive more punishment.  IF, pp. 000178-000179.

### Management's Response

**RMO1** states that after receipt of additional medical documentation provided by Complainant and her doctor on May 28, 2019, Complainant was issued an approval of request for accommodation letter on July 10, 2019.  IF, pp. 000532-000533.

**RMO2** states that on March 20, 2019, RMO1 sent a letter to Complainant requesting additional medical documentation in support of the Agency's assessment of reasonable accommodations and that Complainant reportedly provided the requested information. He states that he does not know of any reasonable accommodation that was denied.  IF, pp. 000558-000559.

### Incident (f): On May 2, 2019, Complainant was placed on Administrative Leave.
### Incident (g): Complainant was suspended for 5 days effective May 6-10, 2019.

**Complainant** states she was placed on administrative leave because NAVSEA Security intended to revoke her security clearance. She states she is sure this was planned; she served her 5-day unpaid leave which ended May 10, 2019 and received her administrative leave on May 10, 2019. She states that NAVSEA Security blamed her for not reporting her issues, but all her supervisors knew she had issues, her local IWS 3 knew, Human Resources/Labor Employment Relations (HR/LER) knew, Reasonable Accommodations (RA) knew, and Equal Employment Opportunity (EEO) knew. She states she cannot believe that no one in these areas gave her a heads up that she should check in with NAVSEA Security. Complainant does not indicate how her suspension constituted harassment or retaliation based on her disability, but states she was adversely affected because she is not receiving any pay or help – not even helping her with processing her paperwork to see if she is eligible for disability retirement.  IF, pp. 000179-000181.

6

**Management's Response**

**RMO1 s**tates that on May 2, 2019, Complainant's prior supervisor issued her a 5-day suspension letter based on the reasons stated in the Notice of Proposed Suspension which included failure to follow leave procedures, lack of candor, disrespectful conduct, and absent without leave, effective May 6-10, 2019. She states the PEO IWS Executive Director approved the placement of Complainant on paid administrative leave for two hours at the end of the day on May 2, 2019, and the entire day on May 3, 2019, prior to the start of Complainant's 5-day suspension the following week.  IF, p. 000048-000054; 000538.

**RMO2** states that after Complainant's former supervisor concluded that she would be suspended from May 6-10, 2019, their legal staff asked if they wanted to put Complainant on paid administrative leave from the time she received the letter until the actual suspension started. The Executive Director for PEO IWS approved the use of this leave.  IF, pp. 000559-000560.

**Incident (h): On May 10, 2019, Complainant received a notice of intent from the Command proposing to suspend her access to classified information and assignment to sensitive position.**

**Complainant** states she was reported for having a mental illness and RMO1 submitted some emails in where Complainant said things like, "I can't live like this anymore." Complainant maintained that her statement indicated she was tired of RMO1's abuse; however, RMO1 reported to Security that Complainant was suicidal. She states RMO1 also reported Complainant was prone to mood swings.  IF, pp. 000180-000182.

**Management's Response**

**RMO2** states that RMO3 issued the Notice of Intent to Suspend Complainant's access to classified information and assignment to sensitive position. He states that without a security clearance, Complainant could not fulfill her duties in IWS 3E. He states that this decision was made at the NAVSEA Security Department, working with DoD Consolidated Adjudication Facility, and not within a program office (IF, pp. 560-561).

**RMO3** states that he conducted a detailed review of the documentation he had been provided by Complainant's supervisory chain and asked follow-up questions and had one of his Personnel Security (PERSEC) specialists meet with Complainant to obtain her perspective. He states that after a thorough review of the documentation, provided by both Complainant and her supervisory chain, he decided to issue a "Notice of Intent…." on May 10, 2019. RMO3 states that the decision to suspend Complainant's access to classified information and assignment to a sensitive position was made in the interest of national security. He states that personal conduct, drug involvement, and psychological condition are three of the adjudicative criteria in SECNAV-M-5510.3 and Security Executive Agent Directive 4. He states that the derogatory information and documentation provided by Complainant impacted these criteria and raised questions about her ability to protect classified information and whether she posed a security risk to self or others. RMO3 states Complainant's psychiatrist's documentation contained inconsistencies and contradictions and did not mitigate Command's concerns regarding Complainant's ability to

safeguard classified information and assignment to a sensitive position. According to RMO3, Complainant was issued the Notice of Intent to Suspend because of:

a. Documented workplace conduct of habitual tardiness and absences, lack of candor regarding tardy incidents and absences, and failure to appropriately document absences from the workplace, which resulted in disciplinary action.

b. Self-described mental health illnesses, to include psychiatric disorders, depression disorder, anxiety (repeated exclamations of living in or consumed with fear), opioid use/withdrawal, stress, attention deficit disorder, problems with concentration or memory, time management issues, and suicidal ideations (repeated exclamations like "no desire to continue living like this"). Failure to report mental health illnesses and the changes in mental health illnesses to security prior to April 2019.

c. Medical documentation of treatment for a number of mental health disorders to include receiving frequent and continuous treatment and medication to management condition, to include obsessive-compulsive disorder, generalized anxiety disorder, major depression disorder, attention deficit hyperactivity disorder, and suicidal ideations (repeated exclamations like "I can't live like this any longer").

d. Documented prescribed medications for treatment of mental health issues with unknown side/causal effects, and failure to take prescription medications as prescribed. No documentation of whether side/causal effects of prescribed medications were being experienced. Notification of having unilaterally stopped taking prescribed medications for mental health conditions against the advice of medical providers.

e. Documented display of erratic behavior and emotional swings while in the workplace. IF, pp. 000568-000570.

## LEGAL ANALYSIS

### Applicable Law

Section 501 of the Rehab Act prohibits employment discrimination against otherwise qualified federal employees with disabilities based on those disabilities. 29 U.S.C. § 791 (2012). Federal law also makes it unlawful for employers to retaliate against an employee for opposing unlawful employment discrimination, filing a discrimination claim with the EEOC, or participating in an investigation of such a claim. 42 U.S.C. §§ 2000e-3(a) and 12203(a). EEO laws encompass not only economic or tangible discrimination, but also includes requiring people to work in a discriminatorily hostile or abusive environment. Franchina v. City of Providence, 881 F.3d 32, 45 (1st Cir. 2018) citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). When the workplace is permeated with discriminatory intimidation, ridicule, and insult, sufficient to alter the conditions of one's employment and resulting in an abusive working environment, EEO laws are violated. See also Swyear v. Fare Foods Corp., 911 F.3d 874, 877 (7th Cir., 2018).

The Rehab Act incorporates the standards of the ADA Amendments Act (ADAAA) of 2008. These standards prohibit discrimination *against a qualified individual on the basis of disability*. § 12112(a). To prove membership in this class, a complainant must show s/he (1) has an impairment that substantially limits one or more major life activities, (2) has record of such an

impairment, or (3) is regarded as having such an impairment. <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 478, (1999); <u>Adams v. Rice</u>, 531 F.3d 936, 939 (DC Cir. 2008)

Major life activities include, but are not limited to, the general activities of "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as the operation of major bodily functions, including "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." § 12102 (2)(A)-(B).  Impairments that would affect a major life activity when active are disabilities even if those impairments are episodic or in remission.  § 12102 (4)(D).  However, minor impairments do not qualify as disabilities. § 12102 (3)(B). Determination of whether an activity is a "major life activity" should not include any reference to whether it is of "central importance to daily life." 29 C.F.R. § 1630.2(i).

The EEOC has promulgated regulations providing that the standard for evaluating "substantially limits" should be broadly construed such that the limitation needs neither "significantly" nor "severely" restrict a major life activity to satisfy the standard. § 1630.2(j)(1). The evaluation should contain reference to the condition, manner, or duration under which a major life activity is performed in comparison to how it is performed by most people in the general population. § 1630.2(j)(4). Furthermore, the ameliorative effects of mitigating measures, except for ordinary eyeglasses or contact lenses, shall not be considered; disability shall be determined based on the extent of limitations prior to using mitigating measures. § 1630.2 (j)(5).

### *Prima Facie* – Harassment / Hostile Work Environment

To plead a hostile work environment claim, a complainant must establish: (1) that s/he belongs to a protected group, (2) that s/he was subjected to unwelcome harassment, (3) that the harassment must have been based on a protected characteristic of the complainant, (4) that the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the agency is responsible for such conduct environment under a theory of either vicarious or direct liability. <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002). This is a demanding standard; a complainant's evidence must go well beyond showing rudeness or incivility <u>Demkovich v. St. Andrew the Apostle Par.</u>, 2020 U.S. App. LEXIS 27653, *1 (7th Cir. 2020). When a record is absent of race or color-based comments, references to one's national origin or religion, sexual remarks, or other actions based on one's protected class, the record fails to demonstrate that the unwelcomed conduct was based on a complainant's protected class. <u>See Complainant v. Dep't of Homeland Sec.</u>, EEOC Appeal No. 0120121501, 2 (Aug. 8, 2014) (affirming an EEOC AJ's summary judgment).  <u>See also Mario H. v. Dep't of Commerce</u>, EEOC Appeal No. 0120150189, 3 (Oct. 14, 2016) (finding no evidence that unwelcomed conduct was based on protected classes when "the record is devoid of insults, slurs, or even innuendos").

Although a complainant's work environment may not be ideal, ordinary workplace interactions do not rise to the level of severe or pervasive to establish a hostile work environment. <u>Complainant v. Dep't of Homeland Sec.</u>, EEOC Appeal No. 0120121501, at 6. Additionally, incidents that are the result of routine supervision, managerial discipline, and general workplace

disputes and tribulations also do not rise to the level of severe or pervasive to establish a hostile work environment. Marciela P. v. Dep't of Veterans Affairs, EEOC Appeal No. 0120141945, 3 (Oct. 21, 2016) (finding that placement of a complainant on a performance plan after numerous performance errors, among other alleged discriminatory incidents, was insufficiently severe or pervasive to establish a hostile work environment). Moreover, incidents involving nothing more than routine work assignments, instructions, or admonishments do not constitute harassment. Complainant v. Dep't of Veterans Affairs, EEOC Appeal No. 0120131259, 3 (Sept. 10, 2015) (citing Bass v. U.S. Postal Serv., EEOC Appeal No. 0120082167, 3 (July 30, 2010)) (finding that incidents involving complainant's AWOL charges, proficiency report, management's attempts to find her a light duty assignment, her cell phone usage, and the moving of her workstation did not constitute harassment). Finally, to determine whether the conduct was sufficiently severe or pervasive, the totality of the circumstances must be considered. Randolph, 453 F.3d at 733.

**Harassment based on retaliation**

Harassment alleged based on retaliation, however, does not have to rise to the level of severe or pervasive; the harassment, instead, must be "sufficiently material to deter protected activity" for it to be an actionable claim. EEOC, Enforcement Guidance on Retaliation and Related Issues § II(B)(3) (2016). Alleged discriminatory conduct that includes references to or comments about a complainant's prior EEO activity is sufficient to deter protected activity. [Complainant] v. Soc. Sec. Admin., EEOC Appeal No. 0120101012, 4 (Apr. 3, 2013) (party's name redacted for privacy purposes) (finding that management officials negatively discussing complainant's prior EEO activity, suggesting that it made it difficult to place her at work and that it would be in the best interest of everyone if she retired was sufficient to deter, not only the complainant, but also others as well). Nonetheless, ordinary workplace conduct without reference to EEO activity is insufficient to deter protected activity. Mendez v. U.S. Postal Serv., EEOC Appeal No. 0120081736, 1 (Apr. 8, 2008) (finding that a complainant's allegation that she was harassed due to her prior EEO activity when she was required to report when and where she took her lunch break and when her supervisor observed her work was not sufficient to deter protected activity).

An agency may produce evidence of the following defenses to hostile environment claims: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; and/or (3) the alleged harassment was not sufficiently severe or pervasive; (4) immediate and appropriate corrective action was taken once the agency was put on notice; or (5) there is no basis for imputing liability under agency principles. Destiny H. v. Dep't of the Navy, EEOC Appeal No. 0120130872, 4 (Dec. 10, 2015) (citing Benavidez v. Dep't of Defense, EEOC Appeal No. 01A33498, 2 (June 3, 2004).

<b><u>Analysis</u></b>

As discussed above, to plead a hostile work environment claim, Complainant must establish: (1) she belongs to a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the agency is responsible for such conduct environment under a theory of either vicarious or direct liability.

Regarding the first prong, the record shows Complainant suffers from numerous mental impairments that affect her daily activities, and that she has participated in prior EEO activity. Accordingly, Complainant has established membership in classes protected under the Rehab Act.

Regarding the second prong, Complainant has established she complained to management and others that she felt she was being treated unfairly, and that their conduct/actions were unwelcome and harassing. Thus, we find she has established the second prong of her *prima facie* case of harassment.

Regarding the third prong, Complainant has failed to provide sufficient evidence to establish the unwelcome conduct was in any way based on her protected classes, as opposed to her performance and behavior. Complainant does not cite any negative or derogatory references to her disability or prior EEO activity. When a record is absent of comments, references or other actions based on one's protected class, the record fails to demonstrate that the conduct was based on a complainant's protected class. Accordingly, Complainant has failed to establish the third prong of her *prima facie* case of harassment.

Regarding the fourth prong of her *prima facie* case, the conduct must be severe or persistent; a single incident or a group of isolated incidents is not enough to establish discriminatory harassment. The totality of the circumstances must be considered when determining whether the conduct was sufficiently severe or pervasive. Randolph v. Ohio Dep't of Youth Serv., 453 F.3d 724, 733 (6th Cir. 2006). Here, Complainant was disciplined for her behavior and violations of the rules, and she does not offer any evidence to the contrary.

Complainant argues that an inability to perform is not misconduct, and that she should have been provided help rather than punishment. However, it is important to note that this claim was not accepted as a failure to accommodate, and Complainant never notified the Agency that they had incorrectly identified her claim. Thus, any such allegation is not before us. The only issue before us is whether Complainant was subjected to a hostile work environment based on her disability and/or prior EEO activity. Moreover, even if Complainant had alleged that the Agency failed to accommodate her disability, the record shows that Complainant and the Agency engaged the interactive process and reasonable accommodations were approved.   While we note that Complainant maintained the approved accommodations were not what she requested, not that the approved accommodations were not effective as legally required.

Considering the totality of the circumstances, we find that the incidents identified by Complainant are the result of routine supervision and routine work assignments and insufficiently severe or pervasive to establish a hostile work environment, or sufficiently material to deter protected activity. Accordingly, Complainant has failed to establish the fourth prong of her *prima facie* case of harassment.

The totality of the evidence in this case fails to show the Agency subjected Complainant to a discriminatory hostile work environment based on her protected classes. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment – an environment a reasonable person would find hostile or abusive – is beyond the Act's purview.

Based on the evidence in this case, we find that a reasonable person would not consider the alleged incidents, singly or in combination, severe or pervasive; therefore, we find Complainant did not establish a *prima facie* case of harassment.

With respect to the fifth prong, because we find Complainant did not establish she was subjected to a hostile work environment, we find no basis to impute liability to management and no further analyses on Complainant's claim is required.

## Conclusion

It is clear that Complainant believes she has been treated unfairly. However, management officials have broad discretion to set policies and carry out personnel actions, so long as the officials are not motivated by discriminatory intent. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Management need not establish that it conducted its business in an optimum fashion, and management may not be found to have discriminated merely because the complainant or an adjudicator would have preferred that management conduct its business differently. Furnco Constr. Corp. v. Waters, 438 U.S. 567, 98 S. Ct. 2943 (1978). It is important to remember that antidiscrimination laws prohibit discrimination; neither guarantees a workplace free from perceptions of unfairness or misunderstandings. Absent evidence of discrimination, it is not the role of the fact finder to sit as a "super-personnel department that reexamines an entity's business decisions." Fischbach v. D.C. Dept. of Corrections, 86 F.3d 1180 (D.C. Cir. 1996).

We have taken the time in this analysis to consider each alleged act of harassment offered by Complainant. To be clear, she has alleged that these acts, taken together, constituted a pattern of harassment designed to adversely affect her employment because of her membership in protected groups. Thus, we took a totality of the circumstances approach in assessing whether the individual acts, when considered as a whole, rise to the level of discriminatory harassment.

It is beyond dispute that the complainant bears the ultimate burden of persuasion in any discrimination case. Because Complainant has failed to establish by preponderant evidence that the actions complained of were sufficiently severe and pervasive to create an objectively abusive work environment, or that the actions were directed at her because of her disabilities or prior EEO activity, we find that Complainant has failed to show that management actions were discriminatory in nature.

## DECISION

Accordingly, we find that the Department of the Navy did not discriminate against Complainant based on disability or reprisal as alleged.

## STATEMENT OF RELIEF

Complainant has not prevailed on this complaint of discrimination. Therefore, Complainant is not entitled to relief.

## NOTICE OF RIGHTS

This is the final decision of the Department of the Navy on Complainant's complaint of discrimination.  Complainant's appeal rights are set forth below.

## RIGHT TO GO TO THE EEOC

Complainant may file a Notice of Appeal with the Equal Employment Opportunity Commission (EEOC or Commission) at any time up to 30 calendar days after receipt of this FAD.

**In response to the ongoing coronavirus pandemic, the EEOC encourages federal employees in the federal sector EEO process to file appeals electronically through the EEOC Public Portal at the following web address:  https://publicportal.eeoc.gov.**

**If Complainant is deaf or hard of hearing, Complainant can reach the EEOC by videophone at 1-844-234-5122.**

**If Complainant has a disability which prevents access to the Public Portal or otherwise has difficulty with accessing the portal, Complainant can call 1-800-669-4000 for assistance.**

As an alternative to filing electronically Complainant may mail the appeal to the following address:

U.S. Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 77960
Washington, DC  20013

As an additional alternative to mailing the appeal, Complainant's appeal may be hand-delivered to:

U.S. Equal Employment Opportunity Commission
Office of Federal Operations
One NOMA Station
131 M Street N.E., Suite 5SW12G
Washington, DC  20507-0004

As a further alternative, Complainant may send the appeal by fax to (202) 663-7022.

When an attorney of record represents Complainant, the Commission determines the 30-day period within which to appeal from the receipt of the FAD by the attorney. In all other cases, the Commission determines the time within which to appeal from Complainant's receipt of the FAD. Complainant should use EEOC Form 573, Notice of Appeal, and indicate what Complainant is appealing. A copy of the appeal form is enclosed.

The Commission deems an appeal filed on the day it is postmarked, or, in the absence of postmark, on the date of receipt by the Commission. Complainant must submit any statement or brief in support of the appeal to the Commission within 30 calendar days of the filing of the Notice of Appeal.

At the same time Complainant provides information to the Commission, Complainant MUST send a copy of the submission to the Agency. Refer to the Certificate of Service attached to this decision for that address.

Service upon the Department of the Navy of any statement or brief in support of the appeal is mandatory. In or attached to the appeal to the Commission, Complainant must certify the date and method by which service was made on this Office.

The Commission will not normally extend the 30-day time limit to file a Notice of Appeal. However, the Commission may, at its discretion, extend the time limit and accept the appeal upon a written statement from Complainant explaining why the Commission should accept the appeal despite its untimeliness. If Complainant cannot satisfactorily explain why the untimeliness should be excused in accordance with 29 C.F.R. § 1614.604, the Commission may dismiss the appeal.

## <u>RIGHT TO GO TO FEDERAL COURT</u>

<u>Deadline to File Suit</u>. In lieu of appeal to the Commission, Complainant may file a lawsuit in the appropriate United States District Court.

Title VII, the Age Discrimination in Employment Act (ADEA), the Genetic Information Nondiscrimination Act (GINA), and the Rehabilitation Act authorize Complainant to file a civil action in an appropriate U.S. District Court:

(1)    within 90 days of receipt of the final decision on an individual or class complaint if no appeal to the Commission has been filed;

(2)    after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

(3)    within 90 days of receipt of the Commission's final decision on appeal; or,

(4)    after 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

Complainant must file the lawsuit <u>WITHIN 90 DAYS</u> of the date of receipt of this decision, unless Complainant has appealed the case to the Commission. Failure to file the lawsuit within 90 days of receipt may result in the dismissal of the suit.  Pursuant to 29 C.F.R. § 1614.409, filing a civil action under 29 C.F.R. § 1614.407 or 29 C.F.R. § 1614.408 shall terminate Commission processing of the appeal.  If Complainant files a private suit subsequent to the filing of an appeal, the Commission requests that the parties notify the Commission of such in writing.

**Federal courts are individually coordinating with state and local health officials to obtain local information about the COVID-19 pandemic and some have issued orders relating to court business, operating status, and public and employee safety.**

**Please visit the following U.S. District Courts website to access information posted to local district court's websites to obtain filing instructions during this pandemic:**

**<u>https://www.uscourts.gov/about-federal-courts/court-website-links/court-orders-and-updates-during-covid19-pandemic#district</u>.**

<u>Special Deadline for Age Discrimination Suits</u>. As to any claim based on the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a), not only must Complainant file suit within 90 days of receipt of this decision, Complainant <u>MAY</u> only have <u>SIX YEARS FROM THE DATE OF THE ALLEGED DISCRIMINATION TO FILE</u> allegations of age discrimination in a lawsuit.  <u>See</u> <u>Lehman v. Nakshian</u>, 453 U.S. 156 (1981); 29 U.S.C. 633a(f); and 28 U.S.C. 2401. Filing an appeal to the Commission will not stop that time from running. If the time limit is close to expiring, Complainant should consider whether Complainant wishes to file a civil suit.  The U.S. District Court may bar Complainant from filing such a suit, should Complainant allow the time limit to expire, even if Complainant has an appeal in process with the Commission.

<u>Notice of Proper Defendant</u>. If Complainant files a lawsuit, Complainant must sue the Secretary of the Navy by name and title.  Presently, the proper defendant is, "Thomas W. Harker, Acting Secretary of the Navy."  Failure to list Mr. Harker's name and his title may result in the dismissal of the case.  Rule 25(d)(2), Federal Rules of Civil Procedure.  Only the Secretary of the Navy is a proper defendant under Title VII of the Civil Rights Act of 1964, as amended.  42 U.S.C. 2000e-16(c).  Complainant may not sue her supervisor, Complainant's unit, Complainant's base commanders, or the Department of the Navy.

<u>Right to Counsel</u>. If Complainant chooses to file a lawsuit and does not have an attorney or is unable to obtain one, Complainant may request that the court assist in locating attorney representation.  The clerk's office of the nearest U.S. District Court is the best place to contact in order to find out if the court can help Complainant locate an attorney.  If Complainant cannot afford an attorney, the clerk's office will explain how Complainant may request the court to appoint an attorney to represent attorney representation without payment of any fees or costs.

If Complainant needs this kind of help, Complainant should contact the court as soon as possible, but no later than 90 days from the date Complainant receives this decision. THE U.S. DISTRICT COURT WILL NOT TOLL COMPLAINANT'S 90 DAYS TO FILE SUIT WHILE COMPLAINANT ATTEMPTS TO GET AN ATTORNEY.  IF COMPLAINANT DECIDES TO FILE A LAWSUIT, COMPLAINANT MUST DO SO IN 90 DAYS WITH OR WITHOUT AN ATTORNEY.


DEANNER P. WHITE
Complaints Program Manager


Enclosures:
EEOC Appeal Form 573
EEOC COVID-19 Notices

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the Agency sent the final action in the discrimination case of **CARRIE THOMAS v. THOMAS W. HARKER, ACTINGSECRETARY OF THE NAVY**, **Case No. DON 20-30270-01944**, to the following parties on the date cited below:

***Via Department of Defense (DoD) Secure Access File Exchange (SAFE):***

**<u>COMPLAINANT</u>**
Carrie Thomas
145 N Vail Drive
Madison Heights, VA 24572
plomeeke@gmail.com

***Via Electronic Mail:***

**<u>SERVICING EEO OFFICE</u>**
HQ, Deputy EEO Officer (SEA 10E)
1339 Patterson Ave SE
Portsmouth, VA 23709
NAVSEAHQEEO.fct@navy.mil

**<u>AGENCY REPRESENTATIVE</u>**
Steven Lippman
1333 Isaac Hull Ave SE
Washington Navy Yard, DC 20376
steven.lippman@navy.mil

For timeliness purposes, we presume that the parties received this notice within five calendar days after issuance:

Date: <u>April 1, 2021</u>

Niekko Dillard
Department of the Navy
Office of Equal Employment Opportunity
614 Sicard Street SE, Suite 100
Washington Navy Yard, DC  20374-5072

**Thomas FAD Key**

| | |
|---|---|
| Complainant | Carrie Thomas, Business Financial Manager |
| RMO1 | Sarah Campbell, Director, Contracts and Business Operations |
| RMO2 | Kirk Johnson, Deputy Major Program Manager |
| RMO3 | John Segura, 0080, Director of Security Programs |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Office of Federal Operations**

**P. O. Box 77960**

**Washington, D.C.  20013**

April 6, 2020

<u>Memorandum</u>

TO:           Federal Sector EEO Directors & Officials

FROM:       Carlton M. Hadden
              Director, Office of Federal Operations

SUBJECT:    Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614

In light of the National Emergency declared by the President due to the Coronavirus (COVID-19), the U.S. Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO) is issuing the following instructions regarding the processing of federal sector EEO complaints covered by 29 CFR Part 1614.

The EEOC recognizes this crisis affects all federal employees, complainants, and others involved in the EEO process.  We appreciate the dedication of federal EEO professionals throughout the federal government and we further recognize that the centerpiece of our efforts are the employees, applicants, and former employees who believe they have experienced employment discrimination and access our regulatory process for assistance.  Nevertheless, the federal government remains open and committed to providing mission-critical services to the greatest extent possible, given the limitations inherent in the current environment.

The EEOC also recognizes that, because of the National Emergency, applicants who utilize the EEO complaint process may face challenges that preclude them from meeting the regulatory timeframes set forth in 29 CFR Part 1614.

The EEOC must balance its duty to ensure that the EEO process continues efficiently and effectively, without compromising the safety of federal employees or the rights or safety of complainants and others involved in the EEO process.

The EEOC expects that agencies and employees will continue to process EEO complaints in a timely manner that will best preserve the legal rights of the parties involved, unless doing so would interfere with mission-critical operations for an agency.  Accordingly, the Office of Federal Operations is issuing the following instructions, which will remain in effect until further notice:

1.  Agencies will continue all counseling, investigations and other complaint processing set forth in 29 CFR Part 1614, except in circumstances meeting the criteria described below.

2.  To the extent practicable, regulatory timeframes concerning the processing of federal sector EEO complaints will continue to be met, wherever feasible. For this purpose, practicable means where the agency and complainant have access to needed witnesses, documents and representation, and where such processing will not interfere with the mission- critical operations of the agency.

3.  The regulatory timeframes set forth in 29 C.F.R. Part 1614 will be subject to the equitable tolling provisions set forth in 29 C.F.R. §1614.604(c). Absent mutual agreement, <u>agencies and complainants will be required to document in the record the reason(s) why tolling any of the time limits set forth in 29 CFR Part 1614 is necessary.</u> Such justification will fully be considered by the Commission in any appeal raised in the matter.

4.  Agencies and complainants are encouraged to seek mutual agreement with respect to the extension of any timeframes. Where such agreements are reached, they should be reduced to writing and made part of the record. OFO will honor such agreements on appeal, unless they are clearly onerous to one party or otherwise violate the standards for equitable tolling, waiver or estoppel.

5.  EEOC Administrative Judges will continue to manage the hearings program. Administrative Judges will continue to hold conferences, manage discovery, refer cases to ADR and settlement, issue summary judgment decisions and, where appropriate, hold hearings and issue decisions. In light of the National Emergency, either party can seek an extension or other relief from any deadline for good cause shown.

6.  The EEOC is deeply concerned about protecting (and committed to ensuring every federal employee continues to have) all their rights during this time of National Emergency. To that end, EEOC asks agency EEO offices to continue counseling employees, accepting their discrimination complaints, and investigating these complaints to the fullest extent possible without undermining mission-critical functions. We ask agencies not to issue final actions on any EEO complaint, unless the investigation is complete <u>and</u> the Complainant has requested that the final action be issued.

7.  EEOC will continue to prepare appellate decisions but will not mail those decisions. A Complainant who provides an e-mail address and waives first class mailing may request the decision via e-mail to [ofo.eeoc@eeoc.gov](mailto:ofo.eeoc@eeoc.gov) . The Commission is extremely cognizant of preserving a party's right to file a civil action in U.S. District Court. Given the current National Emergency, the Commission is suspending issuance of all appellate decisions via the U. S. mail until further notice in order to best preserve those rights.

8.  Until further notice, OFO does not have access to U.S. Mail; rather, we ask that all submissions and communications from both agencies and complainants be digital, via the Public Portal/FEDSEP. We ask those who submitted items via U.S. Mail on or after March 6, 2020 to resubmit them via the Public Portal/FEDSEP.

9.  The Commission supports and encourages the use of digital documents and electronic signatures. A digital document used by a person, agency, or other entity shall have the same force and effect as those documents not produced by electronic means. "Electronic signature" means any digital symbol, sound, or process attached to or logically associated with a digital record and executed or adopted by a person with the intent to sign the record.

10. Each agency subject to the regulations at 29 CFR Part 1614 is directed to forward a copy of this notice, using the most effective available method, to each Complainant with a pending EEO matter and to each person who hereafter contacts an agency EEO counselor or otherwise enters into the agency's EEO process.

11. For more Commission information and resources, please go to our COVID-19 information links at:   https://www.eeoc.gov/coronavirus/



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 77960**
**Washington, D.C.  20013**

<u>Memorandum</u>

TO:              Federal Sector EEO Directors & Officials

FROM:        Carlton M. Hadden
                    Director, Office of Federal Operations

SUBJECT:    Update – April 6, 2020 Memorandum on Processing Information

We issued a memorandum dated April 6, 2020 regarding the processing of federal sector EEO complaints covered by 29 CFR Part 1614 in consideration of the National Emergency. The memorandum is attached for your ease of reference.

The EEOC reiterates its appreciation of the critical work of federal EEO professionals during this time of challenge due to the Coronavirus (COVID-9).  Your dedication is essential to ensuring access to the federal sector EEO process for all who need to utilize it.

The EEOC previously recognized that, because of the National Emergency, applicants who utilize the EEO complaint process might have faced challenges that precluded them from meeting the regulatory timeframes set forth in 29 CFR Part 1614.

Using phased approaches, several agencies and organizations have resumed fuller operations. EEOC believes that there are now fewer issues related to access to counsel and the Courts, and that further delays could negatively impact applicants' ability to protect and exercise their rights effectively.

Therefore, we are adjusting three of the instructions set forth in the April 6, 2020, memo. As discussed in further detail below, EEOC is instructing agencies to return to issuing final actions in the usual manner, unless there are compelling reasons not to do so. Effective Monday, July 27, 2020, EEOC will also expand its issuance of appellate decisions.

Instruction 6 provided as follows:

> *The EEOC is deeply concerned about protecting (and committed to ensuring every federal employee continues to have) all their rights during this time of National Emergency. To that end, EEOC asks agency EEO offices to continue counseling employees, accepting their discrimination complaints, and investigating these complaints to the fullest extent possible without undermining mission-critical functions. We ask agencies not to issue final actions on any EEO complaint, unless the investigation is complete, <u>and</u> the Complainant has requested that the final action be issued.*

Instruction 7 provided as follows:

> *EEOC will continue to prepare appellate decisions but will not mail those decisions. A Complainant who provides an e-mail address and waives first class mailing may request the decision via e-mail to ofo.eeoc@eeoc.gov . The Commission is extremely cognizant of preserving a party's right to file a civil action in U.S. District Court.  Given the current National Emergency, the Commission is suspending issuance of all appellate decisions via the U. S. mail until further notice in order to best preserve those rights.*

Instruction 8 provided as follows:

> *Until further notice, OFO does not have access to U.S. Mail; rather, we ask that all submissions and communications from both agencies and complainants be digital, via the Public Portal/FEDSEP. We ask those who submitted items via U.S. Mail on or after March 6, 2020 to resubmit them via the Public Portal/FEDSEP.*

The Instructions, noted above, are modified as follows:

Instruction 6 as modified, follows:

> *The EEOC remains deeply concerned about protecting (and committed to ensuring every federal employee continues to have) all their rights during this time of National Emergency. To that end, EEOC asks agency EEO offices to continue counseling employees, accepting their discrimination complaints, and investigating these complaints to the fullest extent possible without undermining mission-critical functions. Agencies should return to issuing final actions.*

Instruction 7 as modified, follows:

> *EEOC is expanding issuance of appellate decisions. While the complainant may receive the appellate decision via U.S. Mail, a complainant who has an account with EEOC's Public Portal, may waive receipt via U.S. Mail, and receive the decision via the EEOC Public Portal. Please note that there may be delays in the issuance of decisions sent by first class mail depending on staff access to EEOC's headquarters. Federal agencies will receive the appellate decision via the FedSEP digital platform.*

Instruction 8 as modified, follows:

> *While OFO has limited access to U.S. Mail; parties are encouraged to utilize the Commission's digital platforms, such as the EEOC Public Portal or FedSEP, to communicate with OFO.*

With the exceptions of the modifications noted above, the Instructions as set forth in the April 6, 2020 memorandum continue to remain in effect.

Each agency subject to the regulations at 29 CFR Part 1614 is directed to forward a copy of this update and notice, using the most effective available method, to each Complainant with a pending EEO matter and to each person who hereafter contacts an agency EEO counselor or otherwise enters into the agency's EEO process.

# NOTICE OF APPEAL/PETITION - COMPLAINANT

TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS

P.O. Box 77960

Washington, DC 20013

| | |
|---|---|
| **Complainant Information: (Please Print or Type)** | |
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code) | |
| E-mail address (if any): | |
| **Attorney/Representative Information (if any):** | |
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |
| **General Information:** | |
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an | ? Yes Date Received _____ |

| Arbitrator, FLRA, or MSPB on this complaint? | (Remember to attach a copy)<br><br>? No<br><br>? This appeal alleges a breach of a settlement agreement |
|---|---|
| Has a complaint been filed on this same matter with the Commission, another agency, or through any other administrative or collective bargaining procedures? | ? No<br><br>? Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ? No<br><br>? Yes (Attach a copy of the civil action filed) |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the Commission Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the Commission and with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, submitted, or faxed to the Commission at the address above.

Please specify any reasonable accommodations you will require to participate in the appeal process:

| Signature of complainant or complainant's representative: | |
|---|---|
| Date: | |
| Method of Service on Agency: | |
| Date of Service: | |

**PRIVACY ACT STATEMENT ON REVERSE SIDE.**

**EEOC Form 573 REV 2/09**

**PRIVACY ACT STATEMENT**

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, February 2009

2. **AUTHORITY:** 42 U.S.C. § 2000e-16

2

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and effectively adjudicate appeals filed by federal employees, former federal employees, and applicants for federal employment.

4. **ROUTINE USES:** Information provided on this form may be disclosed to: (a) appropriate federal, state, or local agencies when relevant to civil, criminal, or regulatory investigations or proceedings; (b) a Congressional office in response to an inquiry from that office at your request; and (c) a bar association or disciplinary board investigating complaints against attorneys representing parties before the Commission. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a database for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

You may send your appeal to:

**The Equal Employment Opportunity Commission**

**Office of Federal Operations**

**P.O. Box 77960**

**Washington, DC 20013**

**Fax it to (202) 663-7022 or submit it through the Commission's electronic submission portal.**

3