**EXHIBIT B**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Carrie N. Thomas a/k/a
Jocelyn R.,[1]
Complainant,

v.

Carlos Del Toro,
Secretary,
Department of the Navy,
Agency.

Appeal No. 2021003181

Agency No. 19-30270-01944

DECISION

On May 9, 2021, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's April 1, 2021, final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a NH-0501-IV Financial Manager in the Agency's Program Executive Office for Integrated Warfare Systems in Arlington, Virginia. Report of Investigation (ROI) at 158. Complainant's first-line supervisor was the Director, Contracts and Business Operations (Director), and her second-line supervisor was the Deputy Program Manager (Deputy). ROI at 159, 496, 552. Complainant began working under Director on March 22, 2017. ROI at 159.

Complainant identified her disability as major depression disorder (MDD), general anxiety disorder (GAD), obsessive compulsive disorder (OCD), possible attention deficit disorder (ADD), and possible post-traumatic stress disorder (PTSD). ROI at 158. According to Complainant, on October 9, 2018, she completed intake with an EEO Counselor, who asked if she had considered a reasonable accommodation, so Complainant decided to request a

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                                    2021003181

reasonable accommodation instead of pursuing an EEO complaint at that time. ROI at 158-59. Complainant submitted a reasonable accommodation request on November 26, 2018. ROI at 158, 699-711. On March 20, 2019, Director requested additional medical documentation in support of Complainant's request for reasonable accommodation. ROI at 712-15. Director stated that Complainant provided the requested medical documentation on May 28, 2019. ROI at 502. On July 10, 2019, Director issued Complainant a memorandum with the subject line, "Approval of Request for Accommodation." ROI at 716-18.

Director stated that, between April 2017 and May 2018, she issued Complainant verbal warnings about adherence to time and attendance, telework, and core hours policies. ROI at 530. On June 5, 2018, Director issued Complainant a Letter of Requirement, which required Complainant to adhere to special leave procedures. ROI at 33-40. According to Director, when she issued the Letter of Requirement, she changed Complainant's Maxiflex schedule to a set schedule and suspended Complainant's telework privileges. ROI at 520-21. On October 30, 2018, Director issued Complainant a Letter of Reprimand for six instances of Failure to Follow Instructions, two instances of Failure to Follow Leave Procedures, and three instances of Absent without Leave (AWOL). ROI at 42-46. On December 14, 2018, Director extended Complainant's Letter of Requirement for another six months. ROI at 523-24. On March 4, 2019, Director issued Complainant a Notice of Proposed Suspension for five days based on 15 instances of Failure to Follow Leave Procedures, two instances of Lack of Candor, one instance of Disrespectful Conduct, and 12 instances of AWOL. ROI at 48-54. On May 2, 2019, the Deciding Official issued Complainant a five-day suspension, which she served May 6-10, 2019. ROI at 531. Director stated that the Executive Director approved placing Complainant on paid administrative leave for the remainder of the day on May 2, 2019, and for the entire day of May 3, 2019, prior to the start of her suspension. ROI at 538.

On May 10, 2019, the Director of Security Programs issued Complainant a Notice of Intent to Suspend Access to Classified Information and Assignment to a Sensitive Position and Suspension of Physical Access to Agency facilities on behalf of the Command. ROI at 56-59, 568. The Notice stated that the action was being taken in the interest of national security as a result of: (a) documented workplace conduct of habitual tardiness and absences, lack of candor regarding tardy incidents and absences, and failure to appropriately document absences from the workplace, which resulted in disciplinary action; (b) self-described mental health illnesses, including psychiatric disorders, depression, anxiety, opioid use/withdrawal, stress, ADD, problems with concentration or memory, time management issues, and suicidal ideations (repeated exclamations like "no desire to continue living like this"), and Complainant failed to report her mental health illnesses and changes in her mental health illnesses to security prior to April 2019; (c) medical documentation of treatment for a number of mental health disorders; (d) documented prescribed medications for treatment of mental health issues with unknown side/causal effects, and failure to take prescription medications as prescribed; and (e) documented display of erratic behavior and emotional swings while in the workplace. ROI at 56-57. According to the Notice, these behaviors implicated three adjudicative security criteria, Personal Conduct, Drug Involvement, and Psychological Conditions. ROI at 57.

3                                                        2021003181

On March 15, 2019, Complainant made initial contact with an EEO Counselor to initiate the instant complaint. ROI at 85. On June 19, 2019, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of disability (mental) and reprisal for prior protected EEO activity under the Rehabilitation Act when:

    a.    On or about April 2017, her request for a flexible work schedule as a reasonable accommodation was denied;

    b.    On June 5, 2018, she was issued a Letter of Requirement that placed her under special leave procedures;

    c.    Between October 30, 2018, and March 15, 2019, she was charged AWOL instead of being provided a reasonable accommodation;

    d.    On March 4, 2019, she was issued a Notice of Proposed Suspension for five days;

    e.    On March 21, 2019, management denied her reasonable accommodation request and requested more medical information;

    f.    On May 2, 2019, she was placed on administrative leave;

    g.    Effective May 6-10, 2019, she was suspended for five days; and

    h.    On May 10, 2019, she received a notice of intent from the Command, proposing to suspend her access to classified information and assignment to a sensitive position.

ROI at 109. The Agency dismissed allegations (a) and (b) pursuant to 29 C.F.R. § 1614.107(a)(2), determining that these were discrete acts that were not timely raised to an EEO Counselor. ROI at 109-10.

At the conclusion of the investigation into the accepted claims, the Agency provided Complainant with a copy of the report of investigation and notice of her right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). When Complainant did not request a hearing within the time frame provided in 29 C.F.R. § 1614.108(f), the Agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b). The Agency found that Complainant was covered by the Rehabilitation Act because the record established that she had mental impairments that affected her daily activities.

The Agency's final decision stated that the only accepted claim was whether Complainant was subjected to a hostile work environment based on disability and/or reprisal and noted that Complainant did not object to the framing of the claim. The Agency found that Complainant failed to establish that she was subjected to harassment. The Agency determined that Complainant did not establish that she was subjected to harassment based on her disability and/or protected activity. The Agency also determined that, because the alleged instances of harassment were the result of routine supervisory oversight, Complainant did not establish that the instances would deter protected activity or that they were insufficiently severe or pervasive to establish a hostile work environment. The Agency concluded that Complainant failed to prove that the Agency subjected her to discrimination as alleged.  The instant appeal followed.

On appeal, Complainant argues that the Agency erred in dismissing claims (a) and (b) because she did not have reason to suspect she was subjected to discrimination. Complainant also contends that she should be able to raise the claims discussed with the EEO Counselor on October 9, 2018, because the Agency engaged in affirmative misconduct.

According to Complainant, the Agency erred in finding she did not raise a failure to accommodate claim. Complainant also argues that she established that the Agency failed to reasonably accommodate her. Complainant asserts that she made a "plain language" request for a reasonable accommodation in April 2017, but Director did not address her reasonable accommodation request and disciplined Complainant for behavior related to her need for accommodation. Complainant also contends that, even once she submitted a formal request for accommodation on November 26, 2018, the Agency delayed for months before improperly requesting additional medical documentation on March 20, 2019. Complainant further alleges that the July 10, 2019, "approval" of her request for accommodation was actually a denial. Complainant argues that her requested accommodation of Maxiflex and telework would not constitute undue hardship, noting she had a Maxiflex schedule and the ability to telework until Director revoked them. According to Complainant, the Agency provided no reason for delaying in approving her request for accommodation, and the only portion of the delay attributable to Complainant would be the delay in providing updated medical documentation, but Complainant asserts that her doctor delayed because he felt he had already provided sufficient information and was trying to understand what additional information the Agency was asking for.

Complainant further contends that the Agency ignored direct evidence of discrimination. Complainant cites an email Director sent to a contractor (Contractor) and a subsequent conversation between Director and Contractor about Complainant's disability as evidence of animus. Complainant also asserts that Director disciplined her for time and attendance issues that were directly related to her disability. According to Complainant, security was only aware of Complainant's issues was because Director notified security, and the information Director provided to security was mischaracterized to the point of being untruthful. Complainant contends that she also established that she was subjected to a hostile work environment based on disability and reprisal.

The Agency contends that its final decision should be affirmed. According to the Agency, claim (h) is currently before the Merit Systems Protection Board (MSPB) as part of Complainant's mixed-case appeal of her indefinite suspension after her security clearance and after her access to classified material was suspended. The Agency contends that its proposal to suspend Complainant's access to classified information and assignment to a sensitive position is inherently related to the Agency's decision to indefinitely suspend her and must be dismissed.

<u>ANALYSIS AND FINDINGS</u>

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a).  See <u>Equal Employment Opportunity Management Directive for 29 C.F.R. Part</u>

1614, at Chap. 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

*Framing of the Claims and Procedural Dismissals*

As a preliminary matter, we find that the Agency's final decision erred in determining that the only accepted claim was a hostile work environment claim. Complainant timely raised discrete claims that should be analyzed as denial of a reasonable accommodation and disparate treatment claims as well as part of her overall harassment claim.[2] A finding of denial of a reasonable accommodation does not require discriminatory or retaliatory intent, so it is particularly important to properly analyze reasonable accommodation claims.

Next, we consider the Agency's dismissal of claims (a) and (b) for untimely EEO Counselor contact. EEOC Regulation 29 C.F.R. § 1614.107(a)(2) states that the Agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c), unless the Agency extends the time limits in accordance with § 1614.604(c). EEOC Regulation 29 C.F.R. §1614.105(a)(1) provides that an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. EEOC Regulation 29 C.F.R. § 1614.105(a)(2) allows the Agency or the Commission to extend the time limit if the complainant can establish that Complainant was not aware of the time limit, that Complainant did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence Complainant was prevented by circumstances beyond her control from contacting the EEO Counselor within the time limit, or for other reasons considered sufficient by the Agency or Commission. We agree with the Agency that Complainant failed to timely raise allegation (b) with an EEO Counselor. We disagree with Complainant that her untimeliness should be excused because of the Agency's affirmative misconduct, as there is no evidence that Complainant was misled or of any other misconduct. We also reject Complainant's contention on appeal that she should be able to raise the issues discussed with the EEO Counselor on October 9, 2018, as the record reflects that she voluntarily abandoned these matters.

---

[2] Further, we note that the Agency's final decision incorrectly asserted that its Letter Notice of Partial Dismissal only accepted a harassment claim for investigation. The Agency accepted a harassment claim as well as claims of discrimination based on reprisal and disability. The August 9, 2019, letter stated that Complainant alleged harassment and discrimination and accepted "claims c-h from the list above on the basis of reprisal and disability (mental) and the harassment claim based on reprisal and disability (mental) and a-h above will be used as instances to support your [] harassment claim." ROI at 109.

However, concerning allegation (a), the Commission notes that the duty to reasonably accommodate is ongoing. The Commission has stated that, because an employer has an ongoing obligation to provide a reasonable accommodation, failure to provide such accommodation constitutes a violation each time the employee needs it. See EEOC Compliance Manual, "Threshold Issues," No. 915.003, at 2-IV (July 21, 2005). As such, at the time Complainant contacted the EEO Counselor, she was alleging that the Agency remained unwilling to provide her with the accommodations she still needed. We find therefore, that the Agency's dismissal of the claim as untimely was improper. We find that the record is sufficiently developed to address the merits of this claim.

Finally, we decline to dismiss claim (h) for being "inherently related" to a matter before the MSPB. On January 20, 2022, an MSPB Administrative Judge issued an initial decision on Complainant's mixed case complaint regarding the Agency's September 30, 2019, decision to indefinitely suspend Complainant for failure to maintain a condition of employment, her security clearance.[3]

A mixed case complaint is a complaint of employment discrimination filed with a federal agency, related to or stemming from an action that can be appealed to the MSPB. 29 C.F.R. § 1614.302(a)(1). The Commission long ago abandoned the practice of finding non-appealable claims to be "inextricably intertwined" with appealable claims. Jillian B. v. Dep't of the Navy, EEOC Appeal No. 0120170532 (Apr. 30, 2019). MSPB generally does not have jurisdiction over non-appealable matters, even if they are connected with appealable matters, and the doctrine of inextricably intertwined constituted a request for an MSPB Administrative Judge to hear matters that may not be within the jurisdiction of the MSPB. Complainant v. Inter-American Found., EEOC Appeal No. 0120132968 (Jan. 8, 2014). The only exception is the situation in which a non-appealable matter is a proposed action that becomes final, in which case the proposal is said to "merge" with the final action. Wilson v. Dep't of Vet. Aff., EEOC Appeal No. 0120122103 (Sept. 10, 2012). In this case, the Agency's proposal to suspend Complainant's access to classified information and assignment to a sensitive position is non-appealable, meaning it cannot be appealed to the MSPB due to lack of jurisdiction. See 5 C.F.R. § 1201.3. Therefore, subject to the limitations in the Commission's review of the substance of a security clearance decision, we will analyze this claim.[4]

---

[3] According to the MSPB, this matter is still pending before the MSPB on petition for review.

[4] The Commission does not have jurisdiction to review an agency's determination on the substance of a security clearance decision. EEOC Policy Guidance on the Use of the National Security Exception Contained in § 703(g) of Title VII of the Civil Rights Act of 1964, as Amended, OLC Control Number EEOC-CVG-1989-17 (May 1, 1989) (Policy Guidance); Navy v. Egan, 484 U.S. 518, 529 (1988). Section 703(g) is an affirmative defense to a charge of discrimination. However, the legislative history of § 703(g) makes it clear that the Commission is not precluded from determining whether the grant, denial or revocation of a security clearance is conducted in a nondiscriminatory manner. See Policy Guidance.

*Denial of Reasonable Accommodation*

Complainant alleged that she was denied a reasonable accommodation for her disability. In order to establish that Complainant was denied a reasonable accommodation, Complainant must show that: (1) she is an individual with a disability; (2) she is a qualified individual with a disability; and (3) the Agency failed to provide a reasonable accommodation. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Enforcement Guidance on Reasonable Accommodation), No. 915.002 (Oct. 17, 2002).  An agency is required to make reasonable accommodation to the known physical and mental limitations of a qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship. 29 C.F.R. §§ 1630.2(o) and (p). "The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

Complainant alleged that she first requested a reasonable accommodation for her disability in April 2017. Complainant correctly notes that, when making an accommodation request, an employee is not required to use the magic words "reasonable accommodation." See Enforcement Guidance on Reasonable Accommodation at Q. 1. Instead, the employee need only inform the Agency that she needs an adjustment or change at work for a reason related to a medical condition. See Triplett-Graham v. U.S. Postal Serv., EEOC Appeal No. 0120044720 (Feb. 24, 2006). However, upon review, we find that the preponderance of the evidence record does not reflect that Complainant requested an accommodation in April 2017. Although Complainant communicated some information about her disability in emails with Director in April 2017, her emails cannot be construed as a request for an adjustment or change at work related to her disability.

In an April 7, 2017, email to Director, Complainant stated that, while she was adjusting to a new medication, she had sleeping through her alarms in the morning, but she hoped her body would be "back on schedule" by the next week.  ROI at 284. Complainant asked if it would be helpful to send an email when she arrived in the office, noting, "I certainly don't want to start off on a bad foot with 2 days of late attendance." Id. In an April 26, 2017, email to Director, Complainant stated "I know I've struggled with the core hours," which she attributed to "overwhelming depression" for which she was seeking help. ROI at 313. Complainant promised to make adhering to core hours her number one focus for improvement and told Director, "Again, I cannot thank you enough for your patience with me. I'm sure if it were any other job, I would be in DEEP TROUBLE!" Id. On April 26, 2017, Director responded that she was glad Complainant was seeking therapy and that, "We can be flexible, but within limits." ROI at 289. On April 26, 2017, Complainant replied to Director, "You are the most wonderful, understanding person I've ever met! You have done more than meet me halfway – I owe it to you to be the best employee you've ever had!!" Id. Complainant added, "I don't know how to say thank you enough!!" Id.

8                                                          2021003181

In these messages, Complainant referenced adjusting to new medication and seeking help for overwhelming depression, to which she attributed her late arrivals and trouble adhering to core hours. However, Complainant did not request any changes or adjustments because of her medical condition. Instead, Complainant indicated that she hoped to be back on schedule soon and planned to prioritize core hours, and she thanked Director for her patience and flexibility. These emails are insufficient to notify the Agency that Complainant was requesting a reasonable accommodation for her disability.[5]

To the extent that Complainant contends she was inappropriately disciplined for disability-related behavior prior to requesting a reasonable accommodation, we note that the need for a reasonable accommodation does not excuse past misconduct. See Enforcement Guidance on Reasonable Accommodation at Q. 36 (noting that "[a]n employer must make reasonable accommodation to enable an otherwise qualified employee with a disability to meet such a conduct standard in the future, barring undue hardship, except where the punishment for the violation is termination"). Moreover, "an employer may discipline an employee with a disability for engaging in such misconduct if it would impose the same discipline on an employee without a disability." Id. The Agency was not required to excuse the conduct or to mitigate the penalty as a form of reasonable accommodation, even if the past misconduct was based on her disability. Id. At that point, the Agency was also under no obligation to initiate the interactive process with Complainant regarding the precise limitations resulting from her disability and potential reasonable accommodations that could overcome those limitations.

Complainant further alleged that, from October 30, 2018, to March 15, 2019, she was charged AWOL instead of being provided a reasonable accommodation. Director denied that Complainant was charged AWOL instead of being reasonably accommodated, stating that Complainant was charged AWOL because of her failure to follow instructions and her failure to follow leave procedures. ROI at 505. Director averred that there were several dates during this time period when Complainant failed to follow leave procedures, arrived late, or was away from her desk for extended periods of time, but she allowed Complainant to use annual or sick leave instead of being charged AWOL. ROI at 505-13.

On November 26, 2018, Complainant submitted a reasonable accommodation request. Complainant requested: (1) a Maxiflex schedule; (2) the ability to work credit hours on an ad hoc basis; (3) removal of the Letter of Requirement and the Letter of Reprimand, to be replaced with a more positive system; (4) the ability to telework a minimum of three days per week on an ad hoc basis; (5) a different supervisor; and (6) to be treated with respect. ROI at 704-08.

---

[5] To the extent that Complainant argues that Director should have made additional inquiries about Complainant's medical condition and her possible need for accommodation in April 2017 in response to these emails, we note that an employer may only make disability-related inquiry of an employee when it is job-related and consistent with business necessity. See EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (Enforcement Guidance on Disability-Related Inquiries) No. 915.002 (July 27, 2000).

9                                                                                    2021003181

Complainant provided the following medical documentation with her request for accommodation: (1) discharge paperwork from a Partial Hospitalization Program (PHP); (2) a patient portal printout from Complainant's most recent physical examination with her primary care provider; (3) information about spinal surgery Complainant had in October 2017 and about pain management. ROI at 711. According to the record, Complainant attended the PHP for five weeks starting on July 12, 2018. ROI at 71-74, 158, 755-61. Director stated that she engaged in numerous interactive discussions with Complainant about her request for reasonable accommodation between October 2018 and May 2019. ROI at 517.

Complainant alleged that, on March 21, 2019, management denied her reasonable accommodation request and requested more medical information. On March 20, 2019, Director requested current medical documentation from Complainant. ROI at 462-70, 712-15. Director asked Complainant to present a letter to her physician with enclosures about the requirements and essential functions of Complainant's position. Id. Director requested that her physician provide a signed response that explained the nature, severity, and duration of Complainant's impairment, the essential functions of her position that the impairment limited, the extent to which the impairment limited performance of essential functions, and also identified recommended accommodations, including alternatives if any, that would assist Complainant in performing the essential functions of her position. Id. We find that Director's March 2019 request for medical documentation was reasonable. Although the three documents Complainant provided with her request for reasonable accommodation are not included in the record, the Agency indicated that these documents did not contain specific information about her disability, her limitations, or her need for accommodation. When an employee's disability or need for an accommodation is not known or obvious, an employer may ask an employee for reasonable documentation about his or her disability, limitations, and accommodation requirements. See Enforcement Guidance on Disability-Related Inquiries at Q. 7.

Complainant also contends that her physician had already provided the requested information in the Family and Medical Leave Act (FMLA) forms, and she noted in her reasonable accommodation request that she had submitted two FMLA forms to cover her absence from work while attending the PHP and that these FMLA forms included her full diagnoses, with signs and symptoms specific to her, as well as information from the National Institute of Mental Health (NIMH).[6] ROI at 703.

---

[6] Moreover, although it was subsequently signed by her physician, it appears that Complainant completed the section of her second FMLA form marked "For Completion by the HEALTH CARE PROVIDER." ROI at 68-74, 738-45. The referenced NIMH information consists of pages printed from the NIMH website with general information about anxiety, OCD, and depression, with handwritten notes added by Complainant. ROI at 75-79, 741-45. Upon a complainant's request for reasonable accommodation, an employer may require that documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional. See Enforcement Guidance on Reasonable Accommodation at Q. 6.

10                                                              2021003181

However, the Agency referring to FMLA submissions to obtain confidential medical information needed to evaluate an employee's reasonable accommodation request could potentially violate the Rehabilitation Act. The Commission's regulations implementing the Rehabilitation Act provide for the confidentiality of employee medical records. 29 C.F.R. § 1630.14(c)(1) provides, in pertinent part, that: "Information obtained . . . regarding the medical condition or history of any employee shall . . . be treated as a confidential medical record." By its terms, this requirement applies to confidential medical information obtained from "any employee," and is not limited to individuals with disabilities. See Hampton v. U.S. Postal Serv., EEOC Appeal No. 01A00132 (Apr. 13, 2000). Improper Agency disclosure of such medical information constitutes a per se violation of the Rehabilitation Act. Valle v. U.S. Postal Serv., EEOC Request No. 05960585 (Sept. 5, 1997). Accordingly, even if the FMLA forms contained all of the relevant information needed to evaluate Complainant's request for accommodation, the Agency's request for documentation would not be improper.

Complainant's physician provided the requested medical documentation to the Agency on May 28, 2019, although the record reflects that the Reasonable Accommodation Program Manager did not receive the documentation until June 7, 2019, because it was in her junk folder. ROI at 472-80. Complainant's physician stated that the behavior for which Complainant had been disciplined was directly related to her medical diagnoses and/or medication, and he stated that "further punishments" would only amplify her stress and make her symptoms worse. ROI at 475. Her physician stated that Complainant could perform her job duties and recommended the following accommodations:

> -Any item(s) to *reduce stress*: change to a goal-oriented supervisory method, removing punishment and/or emails/comments expressing negativity or disappointment with work performance (provide coach, training, mentor instead), flexibility with time, doctor/therapy appointments, schedules and deadlines, working from home, etc
> -Any item(s) to assist with *inattention*: cubicle doors, task separation, verbal cues/reminders, written instructions etc.

ROI at 475 (emphasis in original). Complainant's physician did not specifically explain how working from home would assist Complainant to perform the essential functions of her position.

On July 10, 2019, Director issued Complainant a memorandum approving her request for accommodation. ROI at 716-18. Director noted that she modified Complainant's arrival time from 8:30 a.m. to 9:00 a.m. in January 2019 after discussions with Complainant, and she expressed willingness to work with Complainant to consider further modification to her arrival time to meet Complainant's needs while also meeting mission needs. ROI at 716-17. Director reiterated her offer for Complainant to take additional breaks as needed when dealing with severe stress or anxiety. ROI at 717. Noting that Complainant had expressed difficulty with tracking tasks, particularly with her Outlook inbox, because of issues with memory, focus, and organization, Director stated she had provided Complainant with guidance and advice on managing an Outlook inbox, managing daily emails, organizing emails to track work-related

emails, and archiving emails, and she offered to work with Complainant to identify other ways to assist her track items in Outlook. ROI at 717. Director added that, since December 2018, she or a coworker had helped Complainant identify set-back dates or set up Outlook calendar invites to help Complainant keep track of tasks and set-back review times to meet deadlines. ROI at 718. Director also stated that she had requested a government cell phone for Complainant in April 2019 to help with memory, time management, task reminders, and organization and planning. ROI at 717. According to Director, the request was approved, the Mobility team sent Complainant a user agreement for her digital signature on May 10, 2019, and a device was identified for Complainant upon completion of the user agreement. ROI at 717-18. Director stated that, in response to Complainant's request for more privacy to assist with inattention and concentration, in January 2019, she had offered to relocate Complainant's desk to a more private area or to extend the cubicle wall at her current location, and she advised Complainant to let her know if she wished to pursue either option. ROI at 718.

Upon review, we find that the Agency worked with Complainant on an ongoing basis from November 2018 through July 2019 to identify potential accommodations, and, by late 2018 and early 2019, the Agency had already offered Complainant some of the accommodations recommended by her physician in his May 28, 2019, letter. Beginning in December 2018, Director and a coworker began working with Complainant to organize her Outlook inbox and to set up Outlook set-back dates and calendar invites to better track tasks and meet deadlines. In January 2019, Director adjusted Complainant's start time, and she expressed willingness to consider other schedule modifications that would not affect mission needs. Director also offered Complainant the option to take additional breaks as needed. The record reflects that Complainant was allowed to take leave as needed for medical appointments. In January 2019, Director offered to relocate Complainant's desk or to enhance the cubicle walls to help Complainant with focus, and, in April 2019, she got approval for Complainant to get a government cell phone. Based on the Agency's ongoing efforts, although the Agency did not issue a formal decision on Complainant's November 26, 2018, reasonable accommodation request until July 10, 2019, the record does not establish any unnecessary delay.

Based on the record, it is unclear how the other requested accommodations would have allowed Complainant to perform the essential functions of her position. Although Complainant's physician recommended flexibility with "schedules and deadlines," Complainant's Financial Manager position was a senior-level position required her to meet deadlines, sometimes under time-sensitive circumstances. ROI at 469-70. The Agency was not obligated to eliminate essential functions of her position as a reasonable accommodation. See Enforcement Guidance on Reasonable Accommodation. Complainant requested a Maxiflex schedule and the ability to telework, but Complainant's past issues while on a Maxiflex schedule with the ability to telework demonstrated that these requested accommodations would not be effective. Complainant's physician did not explain why working from home would help Complainant perform the essential functions of his position. Further, if Complainant was working from home, it would be harder for her supervisor implement the recommended supervisory methods, written instructions, and verbal reminders to reduce stress and assist with inattention.

12                                                           2021003181

While Complainant is entitled to an effective reasonable accommodation, she is not entitled to the accommodation of her choice. Lynette B. v. Dep't of Justice, EEOC Appeal No. 0720140010 (Dec. 3, 2015). The Agency appropriately engaged in the interactive process to identify effective reasonable accommodations. Under the circumstances of this case, we find that the Agency did not deny Complainant reasonable accommodation in violation of the Rehabilitation Act.

*Disparate Treatment and Harassment Based on Disability and/or Reprisal*

We do not find that Complainant has presented any direct evidence of discrimination based on disability and/or reprisal. To prevail in a disparate treatment claim, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). She must generally establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). The prima facie inquiry may be dispensed with in this case, however, since the Agency has articulated legitimate and nondiscriminatory reasons for its conduct. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley, supra; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351 (Dec. 14, 1995).

To establish a claim of harassment a complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. See Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982). Further, the incidents must have been "sufficiently severe or pervasive to alter the conditions of [complainant's] employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances. Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 at 6 (Mar. 8, 1994).

Reprisal claims are considered with a broad view of coverage. See Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006); see also, Carroll v. Dep't of the Army, EEOC Request No. 05970939 (Apr. 4, 2000). Retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment. Id. Rather, a complainant is protected from any discrimination that is reasonably likely to deter protected activity. Id.; see also, Carroll, supra.

13                                      2021003181

To ultimately prevail on a claim of retaliatory harassment, Complainant must show that she was subjected to conduct sufficient to dissuade a "reasonable person" from making or supporting a charge of discrimination. See Burlington, supra; EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice No. 015.004, at § II(B)(3) & n. 137 (Aug. 25, 2016). Only if both elements are present, retaliatory motivation and a chilling effect on protected EEO activity, will the question of Agency liability for reprisal-based harassment present itself. See Janeen S. v. Dep't of Com., EEOC Appeal No. 0120160024 (Dec. 20, 2017).

We find that the Agency provided legitimate, nondiscriminatory reasons for its actions. The Agency issued Complainant a Letter of Requirement because of her excessive use of unscheduled leave. Complainant was charged AWOL when she failed to follow instructions and/or failure the leave procedures outlined in the Letter of Requirement. Director issued Complainant a proposed suspension and Complainant was suspended for five days because of her failure to follow leave procedures, lack of candor, disrespectful conduct, and AWOL. Complainant was placed on paid administrative leave for the remainder of the day on May 2, 2019 and for the entire day on May 3, 2019, because the effective date of her suspension was May 6, 2019. Complainant received the notice of intent to suspend her access to classified information and assignment to a sensitive position in the interest of national security because the security office had received derogatory information about Complainant's personal conduct, drug use, and psychological conditions.

We further find that Complainant has failed to establish by the preponderance of the evidence in the record that the Agency's legitimate, nondiscriminatory reasons were pretextual. Although Complainant argues that her alleged misconduct was attributable to her disability, the record does not establish that a coworker without a disability or who had not engaged in protected activity would not have been similarly issued a Letter of Requirement, reprimanded, and suspended for the same conduct. Complainant contends that the information provided to the security office was mischaracterized, noting that her statement that she had "no desire to continue living like this" was taken out of context because she was not suicidal. However, the preponderance of the evidence in the record does not establish that the Agency issued this notice based on a discriminatory motive.

We are precluded from finding harassment with respect to these claims based on our finding that Complainant failed to establish that these actions were motivated by disability discrimination and/or reprisal. See Oakley v. U.S. Postal Serv., EEOC Appeal No. 01982923 (Sept. 21, 2000).

CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's decision finding no discrimination.

14                                                    2021003181

## STATEMENT OF RIGHTS - ON APPEAL
### RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.   If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.   A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition.   See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.   In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period.   See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP).   See 29 C.F.R. § 1614.403(g).   Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.   Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.   Any supporting documentation must be submitted together with the request for reconsideration.   The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.   See 29 C.F.R. § 1614.604(c).

15                                                              2021003181

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:


Carlton M. Hadden, Director
Office of Federal Operations


August 30, 2022
Date